EDNA SCOTT, Respondent, v. ST. JOSEPH RAILWAY, LIGHT, HEAT AND POWER COMPANY, Appellant.

Kansas City Court of Appeals, February 3, 1913.

1. **NEGLIGENCE: Stepping Off a Street Car: Credibility of Witness.** The plaintiff sued to recover damages sustained by the negligence of the defendant in operating its street car. The plaintiff and her nephew were riding on the defendant's street car and, desiring to transfer at the end of the line, the plaintiff was in the act of stepping from the rear vestibule to the first step, when the car suddenly started forward, throwing her to the pavement and injuring her. *Held*, that the judgment in her favor will not be disturbed.

2. ———: **Perjury or Mistake: New Trial.** The statute (Sec. 2022, R. S. 1909) makes it the duty of the trial judge to grant a new trial, when satisfied that perjury or mistake has been committed by a witness and such injury or mistake resulted in an improper verdict.

Appeal from Buchanan Circuit Court.—*Hon. Wm. D. Rusk*, Judge.

AFFIRMED.

*R. A. Brown* for appellant.

*Mytton & Parkinson* for respondent.

JOHNSON, J.—Plaintiff alleges she was thrown from a street car on which she was a passenger by the sudden starting of the car, and prays for the recovery of her resultant damages on the ground that the injury she received was caused by the negligence of the operators of the car in starting it while she was in the act of alighting. The answer is a general denial. The cause is here on the appeal of defendant from a judgment of three thousand dollars recovered by plaintiff in the circuit court.

The injury occurred in the afternoon of December 15, 1910, at the end of the Krug Park line of defendant's street railway system in St. Joseph. Plaintiff and her nephew, who was thirteen years of age, were passengers on an outbound electric car and, desiring to transfer at the end of the line to a connecting suburban car, proceeded to alight when the car stopped at that point for the discharge of passengers. There were five departing passengers and plaintiff was the last to leave the car. She and her nephew, who claims he was watching her, state she was in the act of stepping from the rear vestibule to the first step when suddenly the car started forward, throwing her to the pavement. The conductor and motorman introduced as witnesses by defendant deny she was thrown from the car or that it started forward before she had alighted in safety. The other passengers did not see plaintiff fall but immediately thereafter their attention was attracted to her and they observed her lying on the pavement. Two young women who were approaching the stopping place to board a car also had their attention drawn to the scene and hastened to the assistance of plaintiff who appeared to be injured and in need of help. The testimony of these witnesses very strongly corroborates the statement of plaintiff and her nephew that she had

fallen from the car and had sustained severe and painful injuries. Plaintiff was taken into a nearby residence and remained there until an ambulance came and removed her to a hospital. Before her removal a physician was called and the examination he made in the presence of some of the witnesses disclosed a severe and recent bruise at the base of the spine covering an area including the coccyx and sacrum—the last two sections of the spinal column. The physician testified:

"The skin was just grazed as though it had been rubbed or something, just enough so that the blood would just stand to the surface . . . it was fresh . . . and was over the sacrum and coccyx . . . she seemed to be suffering a great deal of pain, she was suffering shock enough that I administered strychnine at that time." He followed her to the hospital and made another examination there. He states: "I had her put to bed and I examined the coccyx and found it misplaced and showed evidence of having been fractured."

Plaintiff was in the hospital from December 15 to February 27 and her condition during that time thus is described by the physician:

"When she entered the hospital, it seemed to be shock and pain from the lick that she had received or fall or whatever it might have been, and then in about a week this trouble with the ovary and appendix developed, and I kept the ice on her, I think, for about four or five days until that was allayed, and then she suffered more from nervousness than anything else from that on, complained of pain down the limbs, over the sciatic nerve and over the plexuses of the nerves that are given off to the spine, and she complained of that off and on at times, and then I don't remember just how long, but I think something like about three weeks, her stomach commenced bothering her, and she

suffered from that on mostly from peptic ulcer of the stomach.

"Q. What seemed to be her condition at that time, describe it? A. Why, it was anaemic. We had to remove food from her. We removed the food from her. She vomited a great deal and was gradually declining in strength, mostly on account of not being able to take nourishment; in fact had to give her nourishment by the rectum."

The physician states that in his opinion the ulcers in the stomach could not have resulted from an external injury but that the other afflictions might have had such origin. We have gone into these particulars of the evidence relating to plaintiff's condition because of the earnest contention of counsel for defendant that the court should have granted a new trial on the ground of the manifest perjury of plaintiff in her testimony on the subject of the cause or causes of the ill health from which it is conceded she is suffering. Plaintiff ascribes her wretched condition to the injury she received from the negligence of defendant, while the evidence of defendant very strongly tends to show that plaintiff was an invalid at the time of the occurrence in question, that she was a nervous wreck, a victim of syncope and a sufferer from peptic ulcers in the stomach, and from anemia. Further it appears that five or six years before the injury in question she had been injured in a fall on a sidewalk and subsequently had prosecuted an unsuccessful suit against the city on account of that injury. The testimony she gave in that case was introduced in evidence. She there claimed that her injuries consisted of a permanent injury to her knee cap, of three fractured ribs, of nervous shock, and a permanent impairment of her nervous system and of internal injuries of a nature to cause her to spit blood continuously.

The statutes (section 2022, Rev. Stat. 1909) make it the duty of the trial judge to grant a new trial when

satisfied that perjury or mistake has been committed by a witness and that such perjury or mistake resulted in an improper verdict. The object of this provision is to clothe the trial judge with a wide discretion to be exercised in the furtherance of substantial justice. He is a trier of fact as well as an expounder of law and, enjoying the advantage of meeting the parties and witnesses face to face, should pass on the question of the credibility of witnesses and the weight of their evidence to the end that none but true verdicts may be suffered to stand. When satisfied that the verdict is unjust he should set it aside and it would amount to a monstrous perversion of justice and a gross dereliction of duty should a trial judge allow a verdict to stand which he was convinced was the product of perjured testimony. [Rickroad v. Martin, 43 Mo. App. l. c. 604; Ridge v. Johnson, 129 Mo. App. l. c. 546; Dean v. Railroad, 229 Mo. l. c. 452.] , •

As an appellate court, our duty with respect to granting a new trial on the ground of perjured testimony is different from that of the circuit judge. We have no authority to solve issues of fact in law cases. Where the questions of the credibility of a witness and of the weight of his testimony are presented by the evidence as controverted issues—as subjects about which there is room for a reasonable difference of opinion—their solution belongs exclusively to the province of the triers of fact and we have no ground for interference.

We must begin with the presumption that the trial judge was not unmindful of his duty when he refused to grant a new trial on the ground of the perjury of plaintiff and that his ruling was prompted by the conclusion that it had the support of the weight of the evidence. To overturn this presumption the record must disclose that the ruling is unsupported by substantial evidence. We have authority to examine evidence in a law case to ascertain whether or not it is

endowed with probative value, but finding it thus endowed our function with respect to the evidence ceases. When it is within the scope of the discretion conferred on the trial judge by the statute we have mentioned, a ruling granting or overruling a motion for a new trial on the ground of perjured testimony is not open to review in the appellate court though the latter tribunal may believe that such ruling is supported only by substantial evidence and not by the preponderance of the evidence.

With these rules in mind we do not hesitate in saying that it would be unjust for us to hold as a matter of law that plaintiff was guilty of perjury in her testimony.

The evidence tending to show that she was thrown from the car by the negligence of the servants of defendant not only is substantial but is very strong as is also the evidence that she sustained physical injuries from her fall. The evidence does disclose a serious conflict over the issue of the extent of those injuries. The jury would have been justified in finding that plaintiff was attempting to magnify her injuries to an extent that would enable her to recover damages for the results of prior injuries and for ill health produced by other causes, and the trial judge could not be said to have abused a sound discretion had he set the verdict aside on such ground, but both judge and jury who enjoyed the advantage of observing plaintiff and her witnesses found their testimony was given in good faith and was worthy of belief. Such finding is sustained by substantial evidence. True, plaintiff claims her injuries produced certain results similar to those she alleged and testified in her prior suit against the city had resulted from a former injury, but it does not necessarily follow she testified falsely at either trial. The whole subject of her credibility and of the weight of her evidence are presented as issues of fact and we perceive no good reason for interfering with the action

of the circuit court in overruling the motion for a new trial.

Defendant complains of the second instruction given at the request of plaintiff. That instruction is similar to the second instruction given for the plaintiff in the case of Bell v. Railroad, 125 Mo. App. 660, and for the reasons stated in our opinion in that case we hold the present instruction is free from prejudicial error.

A careful examination of the record convinces us that the cause was fairly tried and accordingly the judgment is affirmed.

All concur.